Okay, my name is Kevin Merchant and I represent the appellant in this case, Mr. White and his name is Stephen White. And Stephen White, very basically, he worked for Sears during his 30s and 40s in management positions. He was recruited over to Home Depot when he was approximately 40 years old. During his 40s, he did well with Home Depot. He was in charge of a lot of safety things within the store. He had himself, he had three workers' comp claims in 24 years. He worked for Home Depot for 24 years. For 21 years, he had absolutely no problems with Home Depot reviews. He was always a performer, an achiever. Little or no negative comments about him. During June of 2012, he suffered an accident where what was happening is he was required to pull inventory off of pallets that were outside. What was happening was Home Depot was inventorying goods outside and in a tent and there was leaks onto the, you know, onto the pallets. They weren't supposed to be doing that. They, you know, were supposed to keep everything inside and they were in violation of building codes and all sorts of things. But they were doing that. Just the question where, I mean, you can use your time however you wish. I think you should assume that all of the members of the panel have read the briefs and are familiar with the facts. But perhaps, at least I have a question to start with. Under the McDonald-Douglas framework, let's concede just for our purposes of discussion, Mr. White has alleged the crime of patient case of age discrimination and that Home Depot has provided a non-discriminatory reason for termination of employment. What's your best argument that the reasons offered by Home Depot are pretextual? The best argument would be the timing of the events. And it's timing both back at the time of the accident, which shows that he had very good reviews all the way up until two months before the accident, which was 6-12. Then, after the accident, he went to his supervisor and he said, I need to go to workers comp because I hurt my foot. He actually tore a tendon in his foot. She said no. Her name was Ms. Coronado. She said, I'm not going to fill out the claim. You're not going. So he went to a supervisor. The supervisor, of course, said yes. And so he was allowed to go to workers comp. He came back. He had to put a boot on. And he sat at his chair and he had a boot on. He wasn't allowed to go pull things. Then another supervisor came up to him and said, you have to go pull inventory from the back lot again. So at that time, he went to an assistant store manager who said, no, you can't do that to the manager, Ms. Carmona. So he had Carmona and Cordova. Cordova and Carmona were the two managers. Then following that period of time, he suffered approximately 14 or 15 very bad reviews and what are called progressive disciplinary notices. Those progressive In 4-1 of 2015, he received a good review because he went to somebody different or somebody different did the review. It said that he was well positioned and that he had a good review. When did Mr. White change jobs or change positions to his last position as a customer service specialist? He had been in that job, I understand, for about four or five years. He had negatively progressed from being a for no reason. He just he went from being an assistant. He eventually became an assistant store manager. Then as he became older, he was demoted down to what is probably the worst job in the store, which is a customer order specialist. Well, again, my question to you was, what's the argument that is pretextual? You said it was based upon the timing. What specifically did White, did the Houston Home Depot say in the second prong of the McDonnell Douglas response that you believe was pretextual? They said two things. He was terminated on, as I said, on 4-9 of 2015 for two things. They said that he bought a wine cooler improperly and they said that he did not follow up on a single order. Now on the wine cooler, it was he was approached by some in the store and said, do you want to buy a wine cooler? Because they knew that he purchased that he enjoyed buying wine and, you know, collecting it. He said, sure. They then said he went, he bought it. He hadn't even opened up the box. He got a call from their what's called the AACG, Associate Advice and Counsel Group at Home Depot. And they said, you violated this rule. He said, oh, I'll return it. I don't. It's two hundred dollars. You know, I you know, he he did not know it was a violation. His supervisor at the time didn't know it was a violation, but they said it was a major violation. And so they but they kept the money and they wouldn't take back the unopened box. And it was within a very short period of time. The second thing that we think was protection was the there was an order and the there was an order that they said that he didn't follow up on. He did not know about the order because it was concealed from him. It was concealed from him. And it's admitted it's concealed from him. There was a lady named A.J. Smith and she made the order. And there was testimony in deposition testimony. She made the order and she was told not to tell Mr. White that there was a problem with the order, even that the order was made. And she left no notes about the order in whatever their system was to review these orders to make sure that they, you know, to make sure that everything was occurring as it should be. Did did did Mr. White and his complaint indicate who it was that told him it was OK to get the wine to order? And who did he allege obfuscated the the customer order? The the the well, if I can go backwards, the customer order was obfuscated by two people. One was A.J. Smith, who was a worker who was told by his supervisor, which is a lady. Her name, excuse me, it it was his supervisor will come to me. I don't want to use up my time looking for it, but it was his immediate supervisor. And they admitted that she knew about the order and knew about the complaints from the customer on the order. And during the whole period of time and and and and knew that he didn't know, but he more or less should have known. And so, Mr. White, after twenty four years, we believe that was pretextual. Those two write ups, as well as other write up. And another thing that is very important to to the pretextual matters is that the two there were two write ups or management notes saying immediately prior, like a week before, like they were, but they never told Mr. White about these management notes there. So we obtained or we got a witness who is what's called an associate support ASDS emotion, an associate support department supervisor who came in and said that Home Depot and by affidavit said Home Depot was doing or creating management notes in order to support disciplinary notices. And the two notices, which were about they were about 14 days before, but before he received a good review, which was on for one, 14 days before that, they had they had these notices out there saying he wasn't following up on these orders. But then he has his review on for one. So in March, he has two bad ones. And then but he doesn't know about him in on April 1st. He has a good review in the good review. They don't mention even any of the bad things that he's had. And then eight days after he has a good review, he's terminated. Now, we think the district court erred in that regard because the district court found, we believe, that there was too much time in between the injury and the termination. But in between the injury and the termination, there were a number of events that occurred, including there was there were findings that he was final final. There was a surgery during another thing to show that it was pretextual is when he was out on FMLA leave. And that would be in March of 2013. He was he was written up for conduct that he could not have done because he wasn't there. So the best argument would be in pretext is looking exactly like you said, look at look at what happened. He bought a wine cooler. He was willing to return it. He didn't know that they had some sort of thing where you had to wait 24 hours. He wouldn't have even bought it. He he he I don't know that he said the name of the person specifically who approached him and said, do you want to buy the wine cooler? I can't recall that. But I do know that the people that were giving him a hard time at work were the people who in each one of these events, you have Cordova, you have Carmona and this other person, I can't think of her name. And these people every single time they were they were prodding him or trying to get him to quit. They were trying to get him to quit by saying things like you're an old man, you're you have a bad back like all old men have you. We can replace you with two workers for one because they want people to pull inventory. And and and they also raised they also were very personal with him to try to get him to quit. He does those comments, I gather, go to your claim of harassment. Is that correct? Yes, they do. And you believe that those comments arrived right to the level of harassment? I do, especially in light of the last comment they made. He Mr. Mr. White suffered from an anaphylactic shocks type of syndrome caused by angina, whereas uvula in the back of his throat, it would swell up. And so he had to carrying up a pen with him. And he sounds like he was a sickly person, but he wasn't. He's a very hardy person who had that problem. And along with saying he was old, his back was broken and all these types of things like that. He also was told he was he was told by the same three people and their managers. He was told it's it's you have a swollen uterus and they would laugh about it. And it was very personal to him. And the only reason he told him about it is if he if he had anaphylactic shock and he passed out, they would give him a shot. They'd have to. Let me ask you this. I you know, I've been at this for 15 years and I've seen lots of technical harassment cases and the ones that stand up. I mean, it's just shocking. I I with respect, I don't find what you're telling somebody an old man to be shocking. Can you cite any case law where someone was called an old man or an old woman that met the standard of sexual harassment? Oh. I'm. I would just have to refer into the brief, I. Are you saying that you cite a case or cases in there? I was almost called an old man that was found to be sexual harassment. I don't think I cited anything that would say that that was only that that was the only thing that occurred. I know there's there's cases out there like Diaz and Neumeier and things like that where on one occasion it's said and on one occasion it's it's said only to, you know, to a non-management person. I know Home Depot cites into those cases, but that's a tribal issue of fact, I think, for the jury. And it should be presented in the light most in the light most favorable for the plaintiff, for Mr. White. Let me ask you this. You have very little time left. You want to save any for rebuttal? I probably should. I thank you for running on. You're Mr. Shulkoff, please. May it please the court. My name is Jack Shulkoff and I represent Home Depot. We believe that the this court should affirm the trial court's granting of summary judgment in this case. I just want to briefly touch upon, we'll start with discrimination. And this is an age discrimination case. That's how it's pled. And so really the issue is whether Mr. White was age. And the evidence in the case demonstrates that while we agree, we disagree that there is a prima facie case, assuming that there is, that there certainly was evidence of a legitimate non-discriminatory reason for terminating Mr. White's employment. The two triggering events were the first was the purchase of the wine cooler, which plaintiff admits that he did. He admits that it violated policy. His claim is that he didn't know. And certainly ignorance of a policy is no excuse. Although that didn't in of itself lead to his termination. The next one was his failure to monitor a customer order. And remember, as a customer order specialist, his job, the essence of his job was to monitor store orders. Let me, as was pointed out by your opposition, Mr. White has been with Home Depot for a very long time. When I look at these two reasons for termination, they seem kind of trivial. Certainly the wine cooler one does. The second one a little bit less. Were they just looking for an excuse to fire him? Well, I don't think there's any evidence of that. And I think that, too, I would respond to the question two ways. First, whether we might think it's trivial really isn't the issue. The Bradley case that this court issued quite a while ago indicates that the employer's reasons, provided they are legitimate and non-discriminatory, are controlling. And whether they might be trivial or the employee might disagree with them really isn't the issue. And second, I would say that the second issue of the failure to monitor the order really came at the end of a series of warnings and problems in that regard. There were many prior incidents on this specific issue. We referred to them at pages 23 to 25 of our brief that he is consistently in these biannual reviews being told you're not monitoring orders. You're not keeping track. And in fact, the last one, which is at the record on page 283 of the record, which is his April 2015 review, and he's warned Steve is still not executing the COS job, such as review PO Connect bin for any action needed, revolve chargebacks, and customer follow-up. Is there anything in the record that shows what other employees who've been terminated, what their internal ratings were? I mean, when I look at Mr. White's ratings, they're not great, at least in his last position. But he did get a few, you know, satisfactory responses from a supervisor. Is there anything in the record about what other employees who were terminated, what their ratings were? No, Your Honor, and the employer's typically not required to list a kind of comparison. If that was going to be an issue, it would have been the plaintiff's job to find that out in discovery, and plaintiff did no discovery in this case. So really, the employer can rely on the reviews and its determination based on the evidence that Mr. White's job should be terminated. And so, I mean, I think that there's clearly a legitimate non-discriminatory reason, and there's simply no evidence of pretext. There's no evidence that Home Depot was making this up as a way to under the Bradley case, and I suppose absent contrary evidence as a plaintiff, that's all that's necessary to show the bona fides and the non-pretextual nature of the employer's reasons. Is that correct? That's correct. That's correct. As long as it is a legitimate and non-discriminatory reason, the plaintiff or anyone else doesn't get to judge the gravity of it. Can I ask a question, Mr. Shulkoff? How about the opponent's position that, I think her name was Lauren Donna, she did the same thing, the allegation that she failed to follow up on the order, but she was not treated the same way as your client. Right, and the reason for that, as is indicated in the record, is that Ms. Donna had a different job, and so her job wasn't as a customer order specialist. She had a larger and broader position. So Home Depot looked at this and warned her, admonished her, and said this wasn't the whole purpose of your job, but yes, you should have caught this. You manage people. This is something that you get warned for. They considered it a minor violation because it didn't relate specifically and overwhelmingly to her job duties. And so, in fact, in the record, it's at volume 261, where she's accused or she's charged with it was a major work violation because it involved his job responsibilities. So from Home Depot's standpoint, Ms. Donna's failure was kind of an overarching failure to manage customer service, whereas with Mr. White, this is your job. This is your responsibility to make sure this happens, and you didn't do it. And that's why they were treated differently as I mean, that's the thing, that this was a continuing problem. Straw breaks the camel's back with the combination of prior warnings in this area, even as late as April 1st, as well as the wine cooler incident. Was Mr. White specifically told about the previous series of violations? Well, I think that the record shows that certainly in the biannual reviews, he was being told of that. The progressive discipline notices, it's frankly not clear from the record that whether there's evidence that he was specifically sat down and mentioned with those, but clearly in those reviews, he is being told that as well as being monitored, kind of generally and being advised about his poor performance in this area. And then I would just, I'd like to switch to this issue that there still has to be evidence of ageist animus. The question is not simply, was this a good reason? The question is whether it was legitimate non-discriminatory reason, which it was, and then, well, is it protectual for age discrimination? Was the substantial motivating factor that his age and not some other reason? And there's simply not substantial or specific evidence of age discrimination. They rely on kind of uncorroborated allegations from Ms. Martin, Annapola Martin's declaration, that there was some kind of conspiracy to write people up. She claims in her declaration that there was these roundtables where managers would kind of go around and issue improvement ratings, but she conceded in her deposition that she was never actually at those roundtables. And she also conceded that she couldn't, there's no evidence that she knew why people were at those roundtables. There's a trend of older people, but Home Depot is a pretty big company, and a trend of older people is pretty meaningless as far as a statistical analysis. So Ms. Martin's declaration really doesn't show specific and substantial evidence of age discrimination. Similarly, the declarations of other people who were older, who were terminated, several of them don't even say they were wrongfully terminated. Some people say they were wrongfully terminated, but they provide no context. We don't know what they did, why they were terminated, the basis of their termination. The mere fact that five or six people in a company of thousands were terminated and are older is certainly not under the Mundy or Pottinger cases evidence of age discrimination. With regard to the Uvila issue, Mr. White testified in his position that he found it was just teasing, and didn't think much of it, and it certainly wasn't about his age. It wasn't age discrimination. And the old man back, or old men and their back problems, it was one time by Ms. Donna, and Ms. Donna wasn't the one who fired him. And this is not like a Reed versus Google situation in which there are countless comments by all sorts of people, by managers, you know, throughout the workplace. This is one remark that simply is not dispositive to show age discrimination or harassment. In the NITS case and the Nesbitt case, this court rejected things like old-timers wouldn't know how to kowtow to the manager, or we don't like gray hair. That simply isn't enough. So we think that the age discrimination claims and the harassment claims are just without merit. Similarly, with the retaliation claim, there is no retaliation claim here. Again, it's the same analysis. No evidence of retaliatory animus. There's no question Mr. White engaged in the wrongdoing that led to his determination. The trial court correctly found that there was really no complaint of discrimination, so there was no protective activity. And then just lastly, there's a wage claim here. It wasn't mentioned in Mr. Murch's opening, but I do want to point out that, you know, the fundamental problem with the wage claim is that Mr. White testified that he did not work off the clock. And so that basically ends that. And then I would just end by saying that Mr. Murch's argument seems to indicate that some kind of retaliation for filing a workers' comp claim, such a claim would not be appropriate. You can bring claims for facts perhaps underlying that, but not for filing a workers' comp claim. That's a 132a claim under the labor code. It is not subject to a Tammany claim or a wrongful termination in the bridge policy claim. So we believe that the trial court got it right. We understand that this is a de novo proceeding by this court, but looking at all of the evidence in the record, there's no evidence of age discrimination, there's no evidence of retaliation, no evidence of a wage claim, and that the court should affirm the trial court's decision granting summary judgment to Home Depot. Any questions by my colleagues? Just, I have a quick question about the last item you brought up about the wage claim. Wasn't his position that he didn't work off clock, but that he often had to wait 20 to 30 minutes to be let out of the store? And is that necessarily not, I mean, is that not create an issue? Well, he says that he had to wait in line before being released anywhere from 15 to 30 minutes, two to three times a week. That's all he says. We don't know whether, in fact, he even punched out at that point, because he says only that he was done and then he had to wait 30 minutes or 15 minutes. What we don't know is whether he had punched out. We don't know anything other than that specific fact that he was told to wait. And we do know that he testified in his deposition that he never worked off the clock. And so, but I thought he specifically said that after clocking out, he had to wait 20 to 30 minutes to be let out. I think what he said. I think that in his deposition, he said that he had to wait before being released. But if even if that's what he said, it's not clear exactly what was going on there. And that certainly wasn't developed. And when somebody testifies under oath that they did not work off the clock, they can't change that subsequently in a declaration to say that, oh, well, but I didn't really mean that. I meant that I had to stay there or something like that. I mean, it could very well be that he could have left. The problem with declarations that contradict depositions is that you can't cross-examine the person on that. And that's why subsequent declarations that contradict deposition testimony are not fair and are not given any credence. Other questions by my colleagues? All right, Mr. Sholkoff, thank you. So, Mr. Marsh, you have a few minutes of rebuttal time. If I may, on the first thing, with respect to working off the clock. I think the person's having trouble. There we go. Okay. Am I okay? Yes. On working off the clock, there's a California Code of Regulations, and it's section 11-040-6K. And, you know, but 6K. And in that, the standard is not working off the clock. Home Depot had a thing that said, you can't work off the clock. And he didn't work off the clock. He was, under the hours worked, he was controlled by his employer. Nobody from Home Depot has come forward and said that didn't occur. He had to stay at the store two or three times a week for 20, 30 minutes. Afterwards, he couldn't even get out of the store in case they needed him to work extra hours at the store. Then, on the way home, because he was a customer order specialist, he had to stop by job sites to make sure there were no complaints. Again, uncontested. Also, I think it's really important, the context of this order is a summary judgment motion. All the facts where counsel says this is undisputed or nobody has said this, that, or the other thing, well, Mr. White has contested these things. And the contesting of it creates a tribal issue, a fact that must be considered and a light most favorable to Mr. White. It's really important. Also, very good point on Moore and Donna. And thank you for reminding me. I'm bad as a supervisor who hid from Mr. White the fact that there was an order outstanding. And again, nobody from Home Depot has said, no, that wasn't true. We didn't hide it. We didn't put notes in the file. They just say there's absolute liability for Mr. White if he doesn't find out about an order that's being hidden from him. That's right. I think your time is up. Okay. We thank both counsel for their arguments. Very helpful to us. The case just argued, White v. Home Depot, is submitted and the court stands in recess for the day. Thank you. Thank you very much.
judges: M. Smith, Cardone, Lee